# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

### CIVIL ACTION NO.: 3:19-cv-533-RJC-DSC

| | |
|---|---|
| BARBARA GRIFFITH, an individual, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| BANC OF AMERICA MERCHANT SERVICES, LLC, | ) ) ) |
| Defendants. | ) ) |

Defendant Banc of America Merchant Services, LLC (hereinafter "BAMS") submits this Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint (DE # 1) pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and Local Rule 7.3.

## STATEMENT OF THE FACTS AS ALLEGED BY PLAINTIFF

BAMS hired Plaintiff, a resident of Florida, in December 2016 as a Solutions Consultant to be based in Tampa, Florida. (Complaint, DE # 1, ¶ 5). Plaintiff worked remotely for BAMS, which has its corporate office in Charlotte, North Carolina. (Complaint, DE # 1, ¶ 6). In February 2018, BAMS promoted Plaintiff to Vice President, Business Consultant, Large Corporate, Retail & Consumer. (Complaint, DE # 1, ¶ 7). Before Plaintiff's promotion, BAMS instituted, effective January 1, 2018, its 2018 Sales Incentive Plan: Large Corporate Business Consultant[1] (hereinafter "Sales Plan"). (Complaint, DE # 1, ¶ 8). According to Plaintiff, the Sales Plan bound all

---

[1] A complete copy of the Sales Plan was incorporated by reference as Exhibit A to Plaintiff's Complaint. In considering a *Motion to Dismiss,* a court may rely on documentation that are integral to and relied on in the complaint and whose authenticity the plaintiff does not challenge without converting the Motion to one for Summary Judgment. Phillips v. Pitt County Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 56 n. 1 (4th Cir. 2006; Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); Whitesell v. Town of Morrisville, 446 F. Supp. 419, 421-22 (E.D.N.C. 2006).

participants, including Plaintiff, to its terms and conditions. (Complaint, DE # 1, ¶ 9). Plaintiff executed a 2018 Sales Incentive Compensation Opportunity Acknowledgement form regarding receipt of the same. (Complaint, DE # 1, ¶ 10).

Plaintiff alleges her performance entitled her to certain compensation from BAMS pursuant to the Sales Plan. (Complaint, DE # 1, ¶ 10-16). Specifically, Plaintiff alleges she is entitled to an Over Achievement Bonus (hereinafter "OA Bonus") based upon Plaintiff's calculations of her Total In Year Revenue, which she alleges is relevant to her OA Bonus. (Complaint, DE # 1, ¶ 1016). Plaintiff, in part, calculated her Total In Year Revenue, based upon "work[] . . . to sign deals with clients and generate revenue for BAMS" and "after closing a major sale contract in December of 2018". (Complaint, DE # 1, ¶ 12, 16). According to Plaintiff, she failed to receive her full compensation under the Sales Plan, and was allegedly informed by BAMS that it had awarded her all compensation she would receive under the same—which according to the Plaintiff was "only . . . a small portion of [her] OA Bonus." (Complaint, DE # 1, ¶ 14-17). BAMS discharged Plaintiff in February 2019, and Plaintiff alleges the discharge was retaliatory in nature. (Complaint, DE # 1, ¶ 19).

Under the Sales Plan, BAMS is provided broad and exclusive authority and discretion to determine all aspects of the Sales Plan, including eligibility (*See* Plaintiff's Exhibit A, pg. 2, ¶ 2); termination from participation in the Sales Plan (*See* Plaintiff's Exhibit A, pg. 2, ¶ 4); interpretation and administration of the Sales Plan (*See* Plaintiff's Exhibit A, pg. 6, ¶ 6); how sales credit is determined (*See* Plaintiff's Exhibit A, pg. 6, ¶ 7, pg. 7, ¶ 10); and how disputes related to the Sales Plan are determined (*See* Plaintiff's Exhibit A, pg. 7, ¶ 9). Regarding payments made pursuant to the Sales Plan, the language is clear:

> Senior Management [of BAMS] will have the sole and absolute
> discretion to interpret and administer the Program and Program

2

> documents. In addition, Senior Management will have the final, sole and binding decision-making authority with respect to the Program. Program commitments or interpretations (oral or written) by anyone other than Senior Management are invalid and will have no effect on the policies, terms and conditions, and procedures set forth in the Program.

(*See* Plaintiff's Exhibit A, pg. 6, ¶ 6).[2] All discretion is afforded to BAMS in interpreting the Sales Plan's terms and condition regarding payment(s) made—or not made—and which participants, if any, are qualified for such payment(s) under the Sales Plan. As Sales Plan states,

> All Participants who claim there is a discrepancy in any pay received under the Program . . . must submit a written dispute for review within a reasonable time . . . .. Senior Management's review and decision regarding the dispute will be final and binding on the Participant or person claiming payment under the Program.

(*See* Plaintiff's Exhibit A, pg. 7, ¶ 9). In short, the Sales Plan makes clear participants in the Sales Plan, such as Plaintiff, are not guaranteed any supplementation of their salaries from the Sales Plan.

Upon her discharge, Plaintiff filed a complaint with the Commissioner of the North Carolina Department of Labor claiming BAMS retaliated against her for making complaints regarding the Sales Plan. (Complaint, DE # 1, ¶ 37). Plaintiff has not received a decision nor *Right to Sue* letter from the North Carolina Department of Labor. (Complaint, DE # 1, ¶ 37). Plaintiff alleges three theories of liability: (1) BAMS allegedly breached its contract, the Sales Plan, with Plaintiff when it failed to pay the bonus she believes she is owed; (2) BAMS allegedly violated the North Carolina Wage and Hour Act (hereinafter "NCWHA") when the company failed to pay the bonus she believes she is owed; and (3) BAMS allegedly violated the North

---

[2] "'Senior Management' is defined as the Compensation Practices Committee." (*See* Plaintiff's Exhibit A, pg. 1, ¶ 1).

Carolina Retaliatory Employment Discrimination Act (hereinafter "REDA") when it terminated her employment. As will be discussed below, each of these claims should be dismissed.

## ARGUMENT

The Complaint fails to set forth factual allegations against BAMS which plausibly give rise to an entitlement of relief under a theory of breach of contract, the NCWHA, or the REDA. Thus, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Plaintiff's Complaint should be dismissed; the REDA claim should be dismissed for Plaintiff's failure to exhaust her administrative remedies, and the NCWHA and REDA claims should be dismissed for failure to state a claim upon which relief can be granted.

### I. The Motion to Dismiss Standard

The current standard for pleadings is well articulated by the Supreme Court. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss". Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

When considering a motion to dismiss, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs, Inc. v. Makari, 7 F.3d 1130, 1134 (4th Cir. 1993). Not all allegations are entitled to this presumption however, because the court "need not accept the legal conclusions drawn from the facts, and [they] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Thus, "[a] pleading that offers 'labels and conclusions or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (citing Twombly at 550 U.S. at 555, 127 S. Ct. at 1965).

4

To the extent the complaint contains well-pleaded factual allegations, the court next determines whether those allegations plausibly allege a claim upon which relief can be granted. Id. "To survive a motion to dismiss pursuant to Rule 12(b)(6), plaintiff's 'factual allegations must be enough to raise a right to relief above the speculative level,' thereby nudg[ing] their claims across the line from conceivable to plausible." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011) (quoting Twombly at 550 U.S. at 555, 127 S. Ct. at 1965). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The determination of whether a complainant has sufficiently pled a claim "is a context-specific task that requires the reviewing court to draw on its judicial experiences and common sense." Id. at 679. Thus, post Twombly/Iqbal, some amount of factual detail is now required to survive a Rule 12(b)(6) motion. Finally, pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of a case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999).

## II. Plaintiff's Breach of Contract Claim

Plaintiff alleges BAMS breached its contract with her by failing to pay Plaintiff's "full due and owing 'Over Achievement Bonus' for 2018". (Complaint, DE # 1, ¶ 25). Plaintiff's claim is meritless.

To succeed on a breach of contract claim under North Carolina law, a plaintiff must prove (1) the existence of a valid contract, and (2) breach of the terms of the contract. *See* Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000); McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005), *disc. rev. denied*, 360 N.C. 290, 627 S.E.2d 621 (2006). For a contract to

5

be formed, a definite "offer must be communicated, must be complete, and must be accepted in its exact terms." Yeager v. Dobbins, 252 N.C. 824, 828, 114 S.E.2d 820, 824 (1960). To be enforceable, a contract requires assent, mutuality, and definite terms. *See* Horton v. Humble Oil & Ref. Co., 255 N.C. 675, 679, 122 S.E.2d 716, 719 (1961).

"A bonus offered by an employer to encourage more efficient service by an employee is an enforceable supplementary contract even though the bonus may be measured by earnings or productivity rather than by a fixed sum." Buchele v. Pinehurst Surgical Clinic. P.A., 80 N.C. App. 256, 261, 341 S.E.2d 772, 775, *aff'd*, 318 N.C. 503, 349 S.E.2d 579 (1986) (*per curiam*). However, when an employer retains total discretion concerning whether to pay a bonus, *there is no mutual agreement and no contract. See, e.g.*, McCabe v. Abbot Labs., Inc., 47 F. Supp. 3d 339 (E.D.N.C. 2014); Schoenberg v. E.I. DuPont De Nemours & Co., 1997 U.S. Dist. LEXIS 18331, *11-12 (W.D.N.C. 1997) (unpublished) (applying North Carolina law), *aff'd*, 155 F.3d 561,1998 WL 390613, at *2-3 (4th Cir. 1998) (per curiam) (unpublished table decision); Moore v. Associated Brokers. Inc., 9 N.C. App. 436, 437-38, 176 S.E.2d 355, 355-56 (1970) (applying North Carolina law).

The McCabe Court's discussion of a breach of contract claim under similar circumstances is particularly instructive. In McCabe, the plaintiff was a pharmaceutical sales representative for the defendant. McCabe, 47 F. Supp. 3d at 341-42. In addition to plaintiff's salary, plaintiff was eligible for quarterly incentive payments pursuant to the defendant's sales plan documentation. Id. After her discharge, Plaintiff sued her employer under a variety of theories including breach of contract (defendant's sales plan) and violation of the NCWHA for failure to receive bonus compensation under the sales plan that she thought she was owed. Id. at 344. The McCabe Court concluded no breach of contract occurred under the sales plan, because the clear language of the

6

sales plan left any payment(s) under the same to the total discretion of defendant, and therefore there could be no "meeting of the minds". Id. at 345-46. As the McCabe Court noted, "[defendant] retained total discretion concerning whether to pay a bonus. Accordingly, the court grants summary judgment to [defendant] on [plaintiff's] breach of contract claim." Id. at 346.

Here, this matter is materially indistinguishable from the factual underpinnings in McCabe. Like the plaintiff in McCabe, Plaintiff alleges a breach of contract under a sales plan for allegedly unpaid bonus monies. Like the sales plan in McCabe, BAMS' Sales Plan also includes language which keeps total and complete discretion of all matters, including payment(s) and interpretation of the Sales Plan exclusively with BAMS. (*See* Plaintiff's Exhibit A, pp. 2, 5-8). Specifically, as noted above,

> Senior Management [of BAMS] will have the *sole and absolute discretion* to interpret and administer the [Sales Plan]. In addition, Senior Management [of BAMS] will have the *final, sole and binding decision-making authority with respect to the [Sales Plan]*.

(See Plaintiff's Exhibit A, pg. 6, ¶ 6) (emphasis added).

As a result, any alleged failure by BAMS to pay any monies to Plaintiff under the Sales Plan cannot be a breach of contract because there was no meeting of the minds, and therefore, no contract to be breached by BAMS. As such, Plaintiff's claim for breach of contract should be dismissed.

### III. Plaintiff's NCWHA Claim

Plaintiff also alleges a violation of the NCWHA. Under the NCWHA, "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday. Pay periods may be daily, weekly, bi-weekly, semimonthly, or monthly. Wages based upon bonuses, commissions, or other forms of calculation may be paid as infrequently as annually if prescribed

in advance." N.C. Gen. Stat. § 95-25.6. Plaintiff argues her failure to receive "the remainder of the OA Bonus" allegedly owed to her is a violation of the NCWHA. (Complaint, DE # 1, ¶ 32).

Again, the McCabe Court's discussion of an NCWHA claim under similar circumstances is instructive. In McCabe, the plaintiff claimed the defendant violated the NCWHA based upon a failure to pay certain bonuses pursuant to the applicable sales plan. McCabe, 47 F. Supp. 3d at 4748. The McCabe Court, in addition to pointing out certain factual inconsistencies with plaintiff's claim, ultimately dismissed plaintiff's NCWHA because "[f]urthermore, and in any event, [defendant's] reserved discretion in the [sales plan documentation] concerning the calculation and payout of such bonuses defeats [plaintiff's] NCWHA claim." Id. at 347.

Here, again, Plaintiff's claims are materially indistinguishable from the factual underpinnings in McCabe. The Sales Plan specifically reserves the exclusive right to BAMS to determine all calculation(s) and payout(s) under the same. (*See* Plaintiff's Exhibit A, pg. 6, ¶ 6). As such, like in McCabe, there can be no violation of the NCWHA claim. Said another way, Plaintiff cannot be entitled to certain alleged OA Bonus underpayment(s) when such payment(s) were never guaranteed. As such, Plaintiff's NCWHA claim should be dismissed.

## IV. Plaintiff's REDA Claim

Finally, Plaintiff has also claimed a violation of REDA arising from her discharge. To pursue a retaliation claim under REDA, an employee must first file a written complaint with the North Carolina Commissioner of Labor alleging a statutory violation. *See* N.C. Gen. Stat. §§ 95-242; *see also* Johnson v. North Carolina, 905 F. Supp. 2d 712, 727-28 (W.D.N.C. 2012). The Commissioner of Labor will then investigate the claim and either file a civil action on behalf of the employee or issue a right-to-sue letter. See id. §§ 95-242-43. The aggrieved employee *must* receive a right-to-sue letter before filing a civil action under REDA. See id. § 95-243(e) (emphasis added); *see*

*also* Carr. v. United States, 2018 LEXIS 178376 at *17-19 (E.D.N.C. 2018) (dismissing a plaintiff's North Carolina REDA claim under Rule 12(b)(1) for failure to exhaust his administrative remedies).

Plaintiff alleges her discharge was in retaliation for her complaints related to the alleged underpayment of the OA Bonus under the Sales Plan. (Complaint, DE # 1, ¶ 37). Plaintiff failed to plead in her Complaint that a determination of her REDA Complaint by the Commissioner of Labor of the North Carolina Department of Labor has been made or that she has received the statutorily required *Right to Sue* letter to bring an action under REDA.

Most significantly, Plaintiff admits her REDA claim is untimely and thereby improper by stating "Plaintiff is awaiting action of the Commission pursuant to G.S. 95-242 and the statutory time requirements provided therein." (Complaint, DE # 1, ¶ 37). Under these circumstances, Plaintiff's REDA claim should be dismissed as she has failed to exhaust her administrative remedies. See Hall v. Bank of Am. Corp., 2017 LEXIS 146601 at *10 (W.D.N.C. 2017); *see also*, Satterwhite v. Wal-Mart Stores East, L.P., 2012 U.S. Dist. LEXIS 9584, *7-8 (E.D.N.C. 2012) (dismissing a REDA claim where plaintiff failed to exhaust available administrative remedies).

## CONCLUSION

**WHEREFORE**, for the reasons set forth above, Defendant Banc of America Merchant Services, LLC respectfully requests that Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

Respectfully submitted this the 12th day of November, 2019.

**JACKSON LEWIS P.C.**

BY: _____
H. BERNARD TISDALE III
N. C. State Bar No. 23980
JOSHUA R. ADAMS
N. C. State Bar No. 49038
*Attorneys for Defendant*
525 N. Tryon Street, Suite 1600
Charlotte, NC 28202
Telephone: (704) 331-3984
Bernard.Tisdale@jacksonlewis.com
Joshua.Adams@jacksonlewis.com

10

# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## CIVIL ACTION NO.: 3:19-cv-533-RJC-DSC

| | |
|---|---|
| BARBARA GRIFFITH, an individual, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> BANC OF AMERICA MERCHANT ) <br> SERVICES, LLC, ) <br> ) <br> Defendants. ) <br> ) <br> ) | **CERTIFICATE OF SERVICE** |

The undersigned certifies that on November 12, 2019, a copy of *Defendant's Motion to Dismiss Plaintiff's Complaint,* along with supporting memorandum of law, was electronically filed with the Clerk of the Court, using Court's CM/ECF electronic service system, which will send notification of such filing as follows:

| **STRIANESE HUCKERT, LLP** | **CREED & HALL** |
|:---:|:---:|
| Tamara L. Huckert | Dennis A. Creed, III* |
| Christopher Strianese | Florida Bar No. 0043618 |
| N.C. Bar No. 46918 | Bradley R. Hall* |
| Charlotte, North Carolina 28205 | 13043 W. Linebaugh Ave. |
| Tamara@strilaw.com | Tampa, FL 33626 |
| Chris@strilaw.com | Dcreed@creedlawgroup.com |
| | Bhall@creedlawgroup.com |
| | *Pro Hac Vice Application to be Submitted* |

*Attorneys for Plaintiff*

**JACKSON LEWIS P.C.**

BY:     */s/ H. Bernard Tisdale III*
           H. BERNARD TISDALE III
           N. C. State Bar No. 23980
           JOSHUA R. ADAMS
           N. C. State Bar No. 49038
           *Attorneys for Defendant*
           525 N. Tryon Street, Suite 1600
           Charlotte, NC 28202
           Telephone: (704) 331-3984
           Bernard.Tisdale@jacksonlewis.com
           Joshua.Adams@jacksonlewis.com